UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DIAMOND TUCKER ST. PROPERTY, LLC,

Plaintiff,

V.

WILSON, ELSER, MOSKOWITZ, EDELMAN AND DICKER, LLP and MISTY PERCIFIELD, ESQ.,

Defendants.

**VERIFIED CIVIL COMPLAINT FOR DAMAGES**

Plaintiff, Diamond Tucker St. Property, LLC ("Plaintiff" or "DTS"), by and through its counsel, Roderick D. Woods, Esq., as and for its Verified Civil Complaint for Damages against the Defendants, Wilson Elser Moskowitz Edelman & Dicker LLP and Misty Percifield, Esq. (collectively "Defendants"), respectfully states and alleges as follows:

## I. INTRODUCTION

### Aiding and Abetting Fiduciary Breaches, Conversion, and Misappropriation of Protected Assets

1. Plaintiff brings this independent civil action to recover **all available compensatory, consequential, and punitive damages** arising out of the Defendants' intentional, unauthorized extra-judicial data conversion, misappropriation of trade secrets, and tortious subornation of a fiduciary breach.

2. The sole genesis of this action is the Defendants' calculated, voluntary decision to execute a wholesale, unredacted client file dump (the "Watson Disclosures") directly into the hands of an active litigation adversary. Independent acts of data transmission and the delivery of protected corporate files have only one party responsible for their propriety: the actor.

3. No defense firm or handling attorney can hide behind a grossly uncolorable label, or claim immunity under a non-existent discovery directive, to escape judicial review for tortious acts they

committed of their own free volition. No court order ever instructs an attorney to execute an unredacted data dump of a non-party former client's proprietary assets.

4. As demonstrated *infra*, by voluntarily transferring the Plaintiff’s privileged and confidential information to a known adversary, the Defendants did not merely release transactional files; they hand-delivered a complete, explicit blueprint of the Plaintiff's internal thoughts, mental impressions, and private legal strategies.

5. This extra-judicial disclosure armed the adverse third parties with the exact transactional materials and structural text which they previously did not have, and which they directly used merely days later to record a predatory, purported attachment and lien that completely lacked the mandatory statutory and evidentiary requisites to ever be lawfully filed. The Defendants' out-of-court data conversion directly caused the total crystallization of an unlawful property attachment, severe title slander, enormous financial damages and immediate financial ruin.

## II. PARTIES

6. Plaintiff Diamond Tucker St. Property, LLC ("DTS") is a single-member limited liability company organized under the laws of the State of Maryland, with its principal place of business in Beltsville, Maryland. The sole member of DTS is Sean Fillinich, a citizen of the Commonwealth of Virginia.

7. Defendant Wilson Elser Moskowitz Edelman & Dicker LLP ("Wilson Elser") is a national defense law firm organized as a partnership under New York law, maintaining its principal corporate headquarters and executive offices at 150 East 42nd Street, New York, New York, within the territorial jurisdiction of the Southern District of New York.

8. Defendant Misty Percifield, Esq. (“Percifield”) is an individual, an attorney licensed to practice law, and was, upon information and belief at all relevant times, a partner, employee, or designated agent of Wilson Elser who directed, authorized, and executed the tortious conduct complained of herein directly from within this judicial district.

## III. JURISDICTION AND VENUE

9. This Court possesses original subject-matter jurisdiction over this plenary action pursuant to 28 U.S.C. § 1332(a)(1) (Diversity of Citizenship) because the matter in controversy is between citizens of different States and exceeds the sum or value of $75,000, exclusive of interest and costs.

10. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2) because the corporate Defendant is headquartered in this district, all Defendants reside within this district for venue purposes, and the material acts and/or omissions giving rise to the claims occurred in this district.

## IV. STATEMENT OF FACTS

### The Mandatory Fiduciary Duties and the Fact of the Watson Disclosures

11. Attorney Felicia B. Watson, Esq. ("Watson" or "Felicia B. Watson, Esq.") previously acted as legal counsel for the Plaintiff for a real estate closing engagement. The attorney-client relationship was formally terminated for cause.[1] Under black-letter legal principles, an attorney's fiduciary obligation of confidentiality and her strict duty to protect a client's proprietary files and trade secrets permanently outlasts the active representation.

12. Following termination, the Plaintiff became involved in separate litigation against third parties (Karen and Ismet Pupovic). Felicia B. Watson, Esq. was subsequently deposed in a remote deposition in connection with that litigation. Defendants Wilson Elser and Misty Percifield, Esq. were formally retained to act as legal counsel for Watson, explicitly charged with defending her deposition and protecting her professional interests.

13. Prior to and during that deposition, the Defendants came into possession of a complete digital archive of the Plaintiff's confidential, proprietary property files, trade secrets, and internal legal communications, which Watson had acquired exclusively during her former representation. The

[1] Ms. Watson's voluminous malfeasance was detailed in an Affidavit prepared by Michael Virzi, Esq., which is attached as Exhibit "B."

Defendants possessed actual, documented knowledge that the Plaintiff had never executed a waiver of confidentiality, and that no court of competent jurisdiction had ever signed an order compelling the public release or disclosure of these protected files.

14. Deficient of any lawful authorization, and acting out of a malicious intent to secure an improper collateral advantage against Plaintiff, the Defendants actively directed and suborned a total breach of Watson's fiduciary duties. Defendants authorized and physically executed a wholesale, unredacted digital transmission of the Plaintiff's files directly to the adversarial third parties (the "Watson Disclosures").

15. The undeniable proof of this actionable, voluntary data conversion is documented on the face of the official deposition transcript (Exhibit "A"), where Defendant Misty Percifield, Esq., acting as an agent and partner of Wilson Elser, knowingly uttered a willful and malicious lie on the record, falsely declaring:

*"MS. PERCIFIELD: ...I just want to put on the record that attorney-client privilege as to Diamond Tucker has been waived per court order. So Ms. Watson will be directed to answer questions with regard to privilege today."* (Exhibit "A" at Page 9, Lines 2–9).

16. Relying on this fraudulent cover story, the Watson and the Defendants confirm on the record that they print-exported and turned over the entirety of the Plaintiff's files to adversarial counsel Brennen Maki, Esq., without withholding a single byte of data:

*MR. MAKI: "Your lawyer was kind enough to produce to me documents that I've marked as exhibits in this case... Did you produce to your attorney all communications you have in your possession between you and anybody purporting to be involved with Diamond Tucker?"*
*MS. WATSON: "To the best of my knowledge, yes. I went back to my computer and did a search for all communications regarding this matter and then, you know, printed them all out... I have not withheld anything."* (Exhibit "A" at Page 10, Lines 12–25; Page 11, Lines 1–15).

**18.** Armed directly with this illegal file dump, the adversarial third parties 'represented' by Mr. Maki immediately used the confidential blueprint to record a predatory, purported property attachment and lien on the land records, completely freezing the property title, devaluing the Plaintiff's corporate equity below zero, and forcing the total exhaustion of the Plaintiff's assets to fund

artificial carrying costs and extensive multi-front legal defense fees, and incurring substantial damages.

**THE UTTER ABSENCE OF AN ACTIVE LITIGATION PRIVILEGE OR SUBPOENA MANDATE**

19. At all times relevant hereto, the Defendants' tortious subornation of this catastrophic data breach was entirely voluntary, extra-judicial, and executed completely outside the boundaries of any active litigation defense privilege.

20. The Defendants did not enter this matter to represent a civil defendant under a strict, court-monitored discovery order. Rather, they came to Watson's "aid" in a purely voluntary, out-of-court consulting and non-litigation capacity. Deficient of any active litigation shield, and possessing zero authority from a judge, the Defendants' decision to execute a wholesale transmission of a non-party former client's files represents a voluntary, unforced data conversion executed with total impunity.

21. The sheer, rampant scale of the Defendants' unauthorized disclosure demonstrates a wanton disregard for the most elementary duties of professional care and quietude.

22. Under prevailing legal standards, the Defendants knew with absolute certainty that an attorney cannot engage in an unauthorized breach of a fiduciary duty through a corporate intermediary to accomplish indirectly what they are strictly forbidden from doing directly, namely, breaching fiduciary duties to a client.

23. The Defendants knew that a law firm cannot operate as a lawless data laundry. To execute this rampant data conversion, the Defendants operated with total secrecy, **never once contacting the Plaintiff or Plaintiff's outside counsel** to advise them that they were actively processing, print-exporting, and handing over their complete, unredacted historical communication archive to an active litigation adversary

24. By completely concealing the data dump from the true owner of the privilege, the Defendants ensured that the Plaintiff remained entirely blind to the transmission, deliberately blocking the Plaintiff from seeking an emergency protective order or invoking judicial intervention to freeze the files before the structural blueprint could be weaponized by the perpetrators.

## V. CAUSES OF ACTION

### COUNT I: AIDING AND ABETTING A TORTIOUS BREACH OF FIDUCIARY DUTY (ALL DEFENDANTS)

25. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

26. Under the controlling standard articulated by the New York Court of Appeals and the Appellate Division, First Department in *Kaufman v. Cohen*, a claim for aiding and abetting a breach of fiduciary duty is fully stated upon alleging: (1) a primary breach of a fiduciary obligation, (2) that the defendant had actual knowledge of that primary breach, and (3) that the defendant rendered substantial assistance in enabling and proximately causing the breach to occur.

27. Attorney Felicia B. Watson, Esq., owed an absolute, permanent, and unyielding fiduciary duty of confidentiality, quietude, and absolute loyalty to her former client, the Plaintiff. Her wholesale, unredacted public disclosure and out-of-court digital transmission of the client's internal electronic archive and proprietary transaction history directly to an active litigation adversary, integrally aided and abetted by Defendants, constituted a severe primary breach of that fiduciary obligation.

### A. THE DEFENDANTS' COMPREHENSIVE ACTUAL KNOWLEDGE OF THE BREACH

28. Defendants Wilson Elser and Misty Percifield, Esq., possessed active, documented, and **actual knowledge** of the surviving fiduciary duties of confidentiality and privilege that Watson owed to the Plaintiff as a matter of law. The Defendants were fully aware that Watson had acquired the Plaintiff's entire internal corporate communication file exclusively during her former attorney-client representation of the Plaintiff.

29. The Defendants possessed explicit, actual knowledge that the attorney-client privilege and confidentiality protecting these electronic files belonged exclusively to the client, and that the Plaintiff had never executed a waiver, consent, or authorization to release these proprietary assets into the public stream.

30. Furthermore, the Defendants possessed actual knowledge that no court of competent jurisdiction had ever issued a valid, non-appealable order or subpoena compelling the public disclosure or unredacted production of these specific corporate records. The Defendants knew with absolute certainty that by permitting, directing, and executing the transmission of these protected files to an adverse third party, they were suborning a severe and direct violation of an attorney's sacred fiduciary obligations to a former client.

### B. THE DEFENDANTS’ PROXIMATE GENERATION OF SUBSTANTIAL ASSISTANCE

31. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

32. Defendants Wilson Elser and Misty Percifield, Esq. rendered powerful, active, and **substantial assistance** that directly enabled the fiduciary breach to occur and proximately caused the Plaintiff’s catastrophic economic ruin. The Defendants did not merely engage in passive inaction; they stepped completely outside the boundaries of standard defense advocacy to engage in an affirmative, out-of-court data conversion.

33. The Defendants provided substantial, tortious assistance by actively organizing, print-exporting, and physically handing over the unredacted digital communications archive directly into the hands of adversarial counsel Brennen Maki, Esq., prior to the commencement of the deposition terminals.

34. The Defendants further provided critical, tortious assistance and encouragement by explicitly instructing and directing Watson on the record to answer questions detailing privileged matters (Exhibit A at Page 9, Lines 2–9). To force the disclosure and conceal their data conversion from immediate scrutiny, Defendant Misty Percifield, Esq., acting as a partner and agent of Wilson Elser,

knowingly deployed a **manufactured and willful lie on the record**, falsely declaring that the Plaintiff's privilege had been *"waived per court order."*

35. The Defendants' structural execution makes a complete mockery of the rules of professional integrity. They willfully weaponized their status as a corporate intermediary to execute an illegal, indirect data extraction, explicitly intending to shield Watson behind their firm's protective veil while delivering the novel means and opportunity to an adverse third party to execute an extra-judicial property conversion.

**COUNT II: <u>COMMON-LAW CONVERSION OF PROPERTY (ALL DEFENDANTS)</u>**

36. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

37. Under New York law, a claim for conversion is established when a defendant engages in an unauthorized, intentional act of dominion or control over the personal or digital property of another, completely depriving the lawful owner of its unencumbered use and value.

38. The Plaintiff's historical electronic communication archive, proprietary legal strategies, and internal business files constitute protected digital property interests belonging exclusively to the Plaintiff.

39. The Defendants stepped entirely outside the boundaries of standard legal advocacy and executed an unauthorized, out-of-court conversion of these files, physically delivering the digital property to a third-party adversary without consent or lawful authority. This conversion of dominiona and control directly enabled the recording of an illegal encumbrance that devalued the Plaintiff's tangible equity below zero and incurred it substantial damages.

**COUNT III: <u>MISAPPROPRIATION OF TRADE SECRETS (ALL DEFENDANTS)</u>**

40. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

41. To state a claim for misappropriation of trade secrets under New York standards, a plaintiff must establish: (1) that it possessed a trade secret, and (2) that the defendant used or disclosed that trade

secret in breach of an agreement, confidential relationship, or duty, or as a result of discovery by improper means.

42. The Plaintiff’s internal corporate files, unredacted financial transaction histories, and private structural texts concerning real estate capitalization metrics constitute highly sensitive, non-public trade secrets that carried immense commercial and competitive value.

43. The Defendants possessed access to these trade secrets strictly within a confidential, surviving attorney-client relationship. By conducting a digital system sweep and transferring these proprietary trade secrets to a hostile marketplace competitor to cultivate a predatory litigation advantage, the Defendants actively misappropriated the assets, destroying their confidential status and causing severe economic devastation to the Plaintiff.

**COUNT IV: THIRD-PARTY RETALIATORY PROFESSIONAL MALPRACTICE (ALL DEFENDANTS)**

44. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

45. While an attorney generally owes professional duties strictly to their retained client, a national defense law firm and its counsel face direct third-party liability to an injured entity under New York law where they engage in fraud, collusion, or independent intentional torts designed specifically to inflict external devastation.

46. The Defendants' deployment of a manufactured, intentional lie on a deposition record to subvert a non-party's privilege and execute a voluntary data dump constitutes professional malfeasance and a reckless disregard of public policy, rendering them directly liable for all derivative financial injuries.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendants Wilson Elser Moskowitz Edelman & Dicker LLP and Misty Percifield, Esq., as follows:

1. An award of all available compensatory, consequential, and special damages in an amount to be precisely proven at trial, but exceeding the threshold of $75,000;

2. An award of punitive damages for all applicable counts; and

3. Such other and further relief as this Court deems just, proper, and equitable.

Dated: September 15, 2026

Respectfully submitted,

*//s// Roderick D. Woods*
Roderick D. Woods, Esq.
RODERICK D. WOODS, P.C.
880 Third Avenue - Fifth Floor
New York, New York 10022
Telephone: (212) 653-8754
Facsimile: (212) 656-1555
Email: roderick.woods@rdw-law.com
*Attorneys for the Plaintiff*

**VERIFICATION**

SEAN FILLINICH, being duly sworn, states:

I am an authorized representative of Plaintiff, Diamond Tucker St. Property, LLC, in the within action. I have read the foregoing Verified Complaint and know the contents thereof; the same is true to my knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. I declare under penalty of perjury that the foregoing is true and correct.



SEAN FILLINICH